Kevin B. Walker, Esq.
Todd J. Kaiser, Esq. (motion for pro hac vice admission to be filed)
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel: 973-656-1600
Fax: 973-656-1611
Attorneys for Plaintiff
AssuredPartners Jamison, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------------

| | |
|---|---|
| ASSUREDPARTNERS JAMISON, LLC, | Case No.: |
| Plaintiff, | |
| v. | *Civil Action* |
| JOHN P. FERREIRA and NFP CORP., | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| Defendants. | |

------------------------------------------

Plaintiff AssuredPartners Jamison, LLC ("AssuredPartners"), with an address of 20 Commerce Drive, 2nd Floor, Cranford, New Jersey, 07016, through its attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., states the following as its Complaint For Injunctive Relief and Damages against John P. Ferreira ("Ferreira"), 10 Joanne Way, Springfield, New Jersey, 07081 and NFP Corp. ("NFP"), with an address of 360 Mount Kemble Ave, Morristown, New Jersey, 07960 (collectively "Defendants").

## NATURE OF THE ACTION

1.      While employed by AssuredPartners and shortly before his termination, Defendant Ferreira began breaching his fiduciary duties and competing with AssuredPartners. Among other things, Ferreira e-mailed AssuredPartners' confidential files and trade secrets to himself shortly before his resignation, and in violation of his restrictive covenant agreement, solicited at least one of AssuredPartners' clients to leave AssuredPartners for NFP, amounting to losses of more than $108,000 in annual revenue. AssuredPartners seeks the return of its information and compensation for its lost revenue.

## PARTIES, JURISDICTION AND VENUE

2.      AssuredPartners is a limited liability company with its principal place of business in Lake Mary, Florida. AssuredPartners sells property and casualty insurance for safety, risk mitigation, business interruption, workers' compensation, employee benefits and related types of products throughout the United States.

3.      AssuredPartners' only member is AssuredPartners Capital, Inc., which is incorporated in Delaware and has its principal place of business in Florida.

4.      Defendant John Ferreira is a resident of New Jersey and a former employee of AssuredPartners. Ferreira is currently the senior vice president and professional liability practice leader of NFP's management, cyber and professional liability practice. Ferreira is working in Morristown, New Jersey.

5.      Defendant NFP is a corporation with its principal place of business in New York.

6.      NFP is a property and casualty insurance broker that provides property and casualty, benefits, wealth management, and retirement planning.

7.      NFP is a direct competitor of AssuredPartners.

8.     This Court has personal jurisdiction over NFP because it conducts business within this District and because NFP caused events to occur in this District out of which this Complaint arises.

9.     This Court has personal jurisdiction over Ferreira because Ferreira resides in this District, and because Ferreira caused events to occur in this District, out of which this Complaint arises.

10.     This Court has subject matter jurisdiction over the claims of AssuredPartners pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because the First Cause of Action alleges a claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 *et seq*., and AssuredPartners' other claims are so related to its federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

11.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship as there is complete diversity and the amount in controversy exceeds $75,000.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to AssuredPartners' claims occurred in this District.

### **Background**

13.     AssuredPartners is a leading provider of insurance products and services to businesses located in New Jersey.

14.     The business of AssuredPartners primarily focuses on, among others, property and casualty insurance products and services.

15.     AssuredPartners hires and trains salespersons, known as "Producers," to sell its insurance products and services to its clients. AssuredPartners rigorously screens and trains its Producers to ensure that the Producers are qualified to represent and sell its products, have the proper tools to analyze and meet client needs, and can furnish AssuredPartners' clients with tailored insurance solutions and services that satisfy the clients' unique insurance needs.

16.     AssuredPartners expends substantial resources advertising, marketing and promoting its insurance products and services. These expenditures include, among other things, marketing materials, marketing events, and on-and-off-site client events.

17.     The training AssuredPartners provides, the Confidential Information belonging to AssuredPartners, and its substantial expenditures promoting its products and services enables Producers to develop and cultivate loyal client accounts and relationships on behalf of AssuredPartners. Producers solicit business for the Company, provide quotes and proposals to prospective clients, and, once policies are in place, provide day-to-day support as required by clients. In essence, Producers are the "face" of AssuredPartners to its current and future clients.

18.     The loyalty AssuredPartners' Producers generate using AssuredPartners' resources and training procures repeat business, including policy renewals, which provide AssuredPartners with its competitive advantage in the highly competitive insurance industry.

**Protection of AssuredPartners' Confidential Information**

19.     The business of AssuredPartners involves the collection, generation, use, and protection of confidential information, including, but not limited to, the identity of clients and prospective clients, including the contact information for key decision-makers; client insurance needs; vendors; insurance carriers; policy terms of existing clients; expiration/renewal dates; AssuredPartners' financial condition including its marketing plans, pricing and business

strategies and methods; and the services and products AssuredPartners offers, including insurance rating information; and pricing information for AssuredPartners insurance offerings and other products.

20.    AssuredPartners' Confidential Information is the product of years of accumulation and distillation of proprietary information. AssuredPartners has made a considerable investment in terms of hours and expense to accumulate and maintain this confidential information.

21.    AssuredPartners goes to great efforts to maintain the secrecy of its Confidential Information, including, but not limited to: limiting the disclosure and use of this information to those who have specific specialties and experience; educating the Producer about the requirements and necessity of keeping this information confidential; restricting access to this information by limiting access to computer networks containing this information to those employees with specific specialties and experience; requiring the use of passwords to access the information; requiring Producers to execute written agreements that protect against the misuse and improper disclosure and post-employment retention of the Confidential Information, and engaging in post-employment efforts to ensure its Confidential Information is maintained by departing employees in confidence and not shared with competitors. This Confidential Information is not available to the public and is not shared with the public, and it is competitively valuable to competitors of AssuredPartners.

22.    As a condition of employment, AssuredPartners' Producers execute an Employment and Restrictive Covenants Agreement under which the employee agrees that he or she "shall not use, or disclose to any third party, any Confidential Information for any reason other than as intended within the scope of Employee's employment or as approved by an

executive officer of the Company in writing. Upon separation of employment for any reason, or at any other time upon the request of the company, Employee shall immediately deliver to Employer all documents, materials, and data (and copies thereof), in tangible, electronic, or intangible form, relating to the business of the Company." (*See, e.g.*, Exhibit A at ⁋ 3.2).

### Ferreira Enters Into an Agreement With AssuredPartners

23.     Ferreira initially began employment in 1997 with AssuredPartners' predecessor, Herbert L. Jamison & Co., LLC ("Jamison").

24.     Ferreira was a Producer who operated out of Jamison's and, later, AssuredPartners' office located in Cranford, New Jersey.

25.     During Ferreira's employment with Jamison and AssuredPartners, Ferreira focused on sales of property and casualty insurance.

26.     On or about December 19, 2011, AssuredPartners acquired all issued and outstanding equity interests in Jamison ("the Acquisition.").

27.     In connection with AssuredPartners' Acquisition of Jamison, AssuredPartners made an offer of continuing employment to Ferreira subject to the terms and conditions set forth in AssuredPartners' Employment and Restrictive Covenants Agreement ("Agreement").

28.     Ferreira executed the Agreement with AssuredPartners effective December 19, 2011, the closing date of the Acquisition. Attached as Exhibit A to the Complaint is a true and correct copy of the Agreement.

29.     Ferreira's Agreement includes provisions relating to non-disclosure of confidential information, restrictions on solicitation of business on behalf of other insurance companies during the term of the Agreement, and restrictions on solicitation of or conducting of

business with AssuredPartners' clients for a period of two (2) years following the termination of the Agreement.

30.    With regard to non-disclosure of AssuredPartners' Confidential Information, the Agreement states in relevant part:

3.1.    For purposes of this Agreement, the term "Confidential Information" means all confidential, proprietary and/or non-public information, whether or not in a written or recorded form, concerning the business or affairs of the Company, including but not limited to, information concerning:

3.1.1. the Company's clients, prospective clients, acquisition targets, vendors, insurance carriers, policy forms, rating information, expiration dates, and/or contracts or arrangements (including special terms and deals);

3.1.2. the Company's financial condition, results of operations, marketing plans, business plans, operations, pricing, promotions, and business strategies and methods; and

3.1.3. the services and products offered by the Company to its clients or prospective clients, including, but not limited to, policy forms, rating information, expiration dates, information on risk characteristics, and information concerning insurance markets for large or unusual risks.

3.2.    Employee acknowledges and agrees that all Confidential Information is the sole and exclusive property of the Company. Accordingly, both during and after employment with the Company (whether such separation from employment is voluntary or involuntary, or with or without cause), Employee shall not use, or disclose to any third party, any Confidential Information for any reason other than as intended within the scope of Employee's employment or as approved by an executive officer of the Company in writing. Upon separation of employment for any reason, or at any other time upon request of the Company, Employee shall immediately deliver to Employer all documents, materials, and data (and copies thereof), in tangible, electronic, or intangible form, relating to the business of the Company.

(*See* Exhibit A ¶¶ 3.1 through 3.2.)

10.     With regard to the restrictive covenants relating to AssuredPartners' clients, the

Agreement states in relevant part as follows:

4.1.     Except on behalf of the Company, during Employee's employment with the Company and for twenty-four (24) months after Employee's employment ends with the Company (whether voluntary or involuntary or with or without cause), Employee shall not directly or indirectly through another person or entity:

4.1.1.   offer, sell, solicit, quote, place, provide, renew or service any insurance product or service to, or on behalf of, any Restricted Client;

4.1.2.   take any action intended, or reasonably likely, to cause any vendor, insurance carrier, wholesale broker, Restricted Client, other client of the Company, or any other third party with a material business relationship with the Company to cease or refrain from doing business with the Company; or

4.1.3.   solicit, hire, engage or seek to induce any of the Company's employees to terminate such employee's employment with the Company for any reason, including, without limitation, to work for Employee or a competitor of the Company.

4.2.     *Restricted Clients.* For purposes of this Agreement, "Restricted Client" means the following:

4.2.1.   any client of the Company at the office where Employee was employed during the two (2) years immediately preceding the date on which Employee's employment with the Company ended for any reason, whether voluntary or involuntary or with or without cause (the "Separation Date");

4.2.2.   any client of the Company during the two (2) years immediately preceding the Separation Date as to which the Employee either had some involvement in proposing, selling, quoting, placing, providing, servicing or renewing any insurance product or service or about whom the Employee received Confidential Information; or

4.2.3.   any prospective client of the Company within two (2) years immediately preceding the Separation Date as to which Employee had involvement in proposing, selling, quoting, placing, providing, servicing, or renewing any insurance

> product or service or about whom Employee received
> Confidential Information.

(*See* Exhibit A ¶¶ 4.1 through 4.2.)

31.    With regard to remedies available to AssuredPartners for any breach of the

above-referenced covenants, the Agreement states in relevant part as follows:

> 4.3.    *Enforcement.* In the event of the breach or a threatened breach by
> Employee of any of the obligations of **Section 4.1** above, the
> Company, in addition to other rights and remedies existing in its
> favor, shall be entitled to injunctive relief and may apply to any
> court for specific performance, temporary, preliminary, and/or
> permanent injunctive relief, or other relief in order to enforce the
> obligations or prevent any violations of the obligations. In
> addition, in the event of an alleged breach or violation by
> Employee of the obligations in **Section 4.1**, the Restricted Period
> shall be tolled until such breach or violation has been cured.

(*See* Exhibit A ¶ 4.3.) (Emphasis in original.)

32.    The Agreement also states:

> 9.    ***Reasonableness; Modification***. Employee agrees that: (a) the
> obligations and restrictions in Section 4 of this Agreement are reasonable
> in time in and client limitation; (b) the number of Restricted Clients is
> extremely small in comparison to the total number of potential or
> prospective clients; and (c) the obligations and restrictions of Section 4
> do not significantly affect Employee's ability to engage in a lawful
> profession or business to compete fairly with the Company.
> Notwithstanding the foregoing, if, at the time of enforcement of any of
> the obligations in Section 4, a court shall hold that the duration or scope
> of Employee's obligations under Section 4 are unreasonable or
> unenforceable, the parties agree that the maximum duration, scope, and
> list of Restricted Clients, as determined by the court, shall be substituted
> and that the court shall enforce the obligations as modified.

(Exhibit A ¶ 9.)

33.    The Agreement further provides that, "[i]f the Company engages one or more

attorneys to enforce any of the terms of this Agreement or otherwise protect the Company

against any breach or threatened breach of this Agreement, whether or not a lawsuit or claim is

filed, Employee shall be responsible for all of the Company's actual attorney's fees, costs and

expenses, and all other reasonable costs and expenses, in addition to any other legal or equitable relief to which the Company may be entitled." (*See* Exhibit A ¶ 19).

<u>**Ferreira's Employment and Separation**</u>

34.    Ferreira's primary client base while employed by AssuredPartners was selling insurance products and services to AssuredPartners' property and casualty insurance clients in New Jersey.  One of his clients was Cooper Levenson.

35.    On November 9, 2022, Ferreira tendered his notice of intent to resign to AssuredPartners, designating November 30, 2022, as his final day of employment.

36.    One December 1, 2020, Cooper Levenson notified AssuredPartners that Cooper Levenson no longer needed AssuredPartners to act as its broker of record.

37.    After Ferreira's last day of employment, AssuredPartners learned that Ferreira accepted employment at NFP.

38.    A forensic examination of Ferreira's work computer revealed that in the weeks prior to his last day, Ferreira forwarded substantial amounts of AssuredPartners' confidential and trade-secret information from his @chamberagent.com email to his personal email accounts at jpferr915@gmail.com and/or sjferreira@comcast.net.

39.    The following timeline outlines AssuredPartners' findings regarding Ferreira's activities leading up to his resignation through his last day of employment.

a.    <u>October 25, 2022</u>: Ferreira forwarded four (4) emails to his personal email containing renewal applications, policies, and binders dated February 18, 2022, February 28, 2022, June 10, 2022, June 24, 2022, for three AssuredPartners' clients.

b. <u>October 25, 2022</u>: Ferreira forwarded four (4) emails to his personal email containing policies, quotes, renewal binders, and finance agreements dated November 19, 2021, December 1, 2021, December 6, 2021, and February 2, 2022 for AssuredPartners' client, Cooper Levenson.

c. <u>October 25, 2022</u>:  Ferreira forwarded four (4) emails to his personal email containing policies, claims reports, and quotes dated August 18, 2022, September 8, 2022, September 29, 2022, and October 13, 2022, for another AssuredPartners' client.

d. <u>October 25, 2022</u>:  Ferreira emailed policy information regarding the above client dated April 29, 2022, July 12, 2022, and September 8, 2022, along with a summary of this client's "Summary of Professional Liability Insurance Program" to his personal email address.

e. <u>October 28, 2022</u>: Ferreira forwarded an email regarding quote proposals for a different client dated August 25, 2022, to his personal email.

f. <u>October 31, 2022</u>: Ferreira sent an email to sjferreira@comcast.net and his personal email address with the subject line "Re: Misc" containing a client's professional liability, association professional liability, auto dealer and repair program, data breach liability insurance, product guide, commercial GL, commercial property, commercial umbrella, corporate counsel professional liability, contractor pollution liability, casualty with pollution, not-for-profit professional liability, professional liability, equipment breakdown, professional liability, healthcare facilities, and vacant commercial.

g.  November 1, 2022: Ferreira emailed Cooper Levenson's certificate of insurance dated October 19, 2022, to his personal email account.

h.  November 1, 2022: Ferreira emailed AssuredPartners marketing materials with specific descriptions of AssuredPartners services to his personal email.

i.  November 9, 2022 (8:00 a.m.): Ferreira emailed AssuredPartners' Rob Roth and Jessica Nelson formal notification of his resignation and stated his last day would be November 30, 2022.

j.  November 11, 2022: Phone records for the phone number AssuredPartners assigned Ferreira show he spoke to Cooper Levenson executives via AssuredPartners' phone.

k.  November 16, 2022: Ferreira accessed a client's Products-Marketing files including the following documents: "Vacant Commercial Property.doc"; "Other Commercial Products.doc"; "Networks Security & Privacy Technology – Media – Cyber Professional Liability.doc"; "Not For Profit Professional Liability.doc"; "General Liability.doc"; "Corporate Counsel Professional Liability.doc"; "Association Professional Liability.doc"; "Cyber –Data Breach Liability Insurance Summary Sheet.doc"; among others.

l.  November 16, 2022: Ferreira sent an email to his personal email address with the subject line "RW: RE Various product marketing summaries" containing the same attachments as the prior October 31, 2022, "Re: Misc" email.

m.  November 16, 2022: Ferreira accessed renewal letters, policy letters, and certificates relating to a different client.

n. <u>November 16, 2022 (10:30 a.m.)</u>: Ferreira informed a client of AssuredPartners that he would be leaving as of November 30, 2022.

o. <u>November 17, 2022 (3:52 p.m.)</u>:  Ferreira forwarded LPL carrier contacts to his personal email address.

p. <u>November 18, 2022</u>: Phone records for the phone number AssuredPartners assigned Ferreira show he spoke to Cooper Levenson executives via AssuredPartners' phone six times.

q. <u>November 21, 2022 (11:09 a.m.)</u>:  Ferreira forwarded his November 9, 2022, resignation email to his personal email address.

r. <u>November 21, 2022 (11:10 a.m.)</u>:  Ferreira emailed a copy of his November 16 communication advising a client of Ferreira's impending departure from AssuredPartners to his personal email address.

s. <u>November 21, 2022</u>: Ferreira accessed renewal letters, excess policies, and renewal proposals relating to a separate client.

t. <u>November 21, 2022</u>: Ferreira accessed renewal quotes and other unspecified files relating to another client.

u. <u>November 22, 2022</u>: Ferreira accessed Budget documents for a client.

v. <u>November 23, 2022</u>: Ferreira ported the mobile number AssuredPartners assigned him to another phone in violation of company policy and procedure.

w. <u>November 29, 2022</u>: Ferreira accessed multiple renewal documents relating to Cooper Levenson.

x. <u>November 30, 2022 (8:39 a.m.)</u>:  AssuredPartners' Rob Roth emailed Ferreira, stating they "need to hop on a call today," and Ferreira forward

Roth's email to an assistant stating "you can not make this shit up" and "just really sad and pathetic.

y.  <u>November 30, 2022</u>: Ferreira accessed multiple renewal policy and proposal letters relating to a client.

z.  <u>November 30, 2022</u>: Ferreira accessed a renewal quote letter and binder letter relating to another AssuredPartners' client.

aa. <u>November 30, 2022 (2:22 p.m.)</u>:  Ferreira emailed AssuredPartners' Stephen Lawrence to notify him of Ferreira's intent to continue using his licenses.

bb. <u>December 2, 2022</u>:  Ferreira's last day of employment.

cc. <u>December 9, 2022</u>: Ferreira sent emails to an AssuredPartners' client with the subject line "Greetings/RE:Greetings/Fwd: Greetings."

**AssuredPartners Loses Major Customer to NFP**

40.  Just one day after Ferreira left AssuredPartners, Cooper Levenson left AssuredPartners and went to NFP.

41.  NFP is a direct competitor of AssuredPartners. Like AssuredPartners, NFP also provides insurance and brokerage services and sells property and casualty insurance.

42.  On December 9, 2022, AssuredPartners sent a letter to Ferreira reminding him of continuing obligations to AssuredPartners, including the obligation to return and safeguard AssuredPartners' Confidential Information, and to abide by Ferreira's restrictive covenants as set forth in Sections 3.2 and 4.1 of the Agreement. Attached as <u>Exhibit B</u> to the Complaint is a true and correct copy of the letter.

43.  In the December 9, 2022, letter, AssuredPartners asked Ferreira to acknowledge he understood the obligations contained within his Agreement. (*See* Exhibit B, at p. 3.)

44.     NFP is aware of the post-employment obligations Ferreira has to AssuredPartners.  In fact, NFP uses a very similar restrictive covenant agreement with its producers.

45.     On December 22, 2022, counsel for NFP responded to AssuredPartners, stating "Mr. Ferreira is aware of his covenants with AssuredPartners, and we have reminded him that we expect him to comply with his existing covenants."

46.     Ferreira wrongfully retained AssuredPartners' Confidential Information after Ferreira's separation from employment, despite the prohibition on doing so under the terms of the Agreement.

47.     NFP is aware Ferreira wrongfully retained AssuredPartners' Confidential Information after Ferreira's separation from employment, despite the prohibition on doing so under the terms of the Agreement.

48.     Ferreira used AssuredPartners' Confidential Information – including confidential client contact information and carrier information – to solicit AssuredPartners' clients for NFP.

**Irreparable Harm to AssuredPartners**

49.     AssuredPartners' competitive advantage and success is based in large part upon the goodwill and the strength of Producers' relationships with its clients, which Producers develop, foster and maintain using the training and Confidential Information that AssuredPartners provides to its Producers.

50.     Ferreira was and is exploiting AssuredPartners' Confidential Information for Ferreira's own gain, and for the gain of NFP.

51.     Ferreira's possession of AssuredPartners' Confidential Information enables NFP to unfairly compete with AssuredPartners.

52.     Ferreira's actions have irreparably harmed and continue to harm AssuredPartners' legitimate business interests, its goodwill with its clients, and jeopardize its client relationships.

53.     AssuredPartners Confidential Information must be returned and Ferreira's computer wiped clean to prevent Ferreira and/or NFP from using the Confidential Information to contact AssuredPartners' clients and offer competing products and services.

54.     If NFP and/or Ferreira succeed in using confidential and trade secret information to divert AssuredPartners' clients, AssuredPartners' years of work to develop its Confidential Information and client relationships will be forever damaged.

55.     Accordingly, AssuredPartners is suffering irreparable harm and immediate injunctive relief is necessary and appropriate to prevent further damage to AssuredPartners.

56.     Injury to AssuredPartners is probable and imminent because Ferreira has already used, and demonstrated an intent to, and is likely to continue to, use AssuredPartners' Confidential Information in violation of the law and the Agreement.

**FIRST CAUSE OF ACTION**
**Violation of the Defend Trade Secrets Act 18 U.S.C. 1832 *et seq*.**
**(Against Ferreira and NFP)**

57.     AssuredPartners re-alleges and incorporates paragraphs 1 through 56 by reference as if fully set forth herein.

58.     AssuredPartners' Confidential Information regarding the identity of clients and prospective clients, including the contact information for key decision-makers; client insurance needs, vendors, insurance carriers, policy terms of existing clients, expiration/renewal dates, AssuredPartners' financial condition including its marketing plans, pricing and business

strategies and methods; and the services and products AssuredPartners offers, including insurance rating information, and pricing information for AssuredPartners' insurance offerings and other products, constitute trade secrets as defined by the Defend Trade Secrets Act, 18 U.S.C. § 1832 et seq. ("DTSA"). This information has independent economic value because it is not generally known to and not readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use. This information is often kept and compiled into renewal binders, claims reports, quotes and summaries of insurance programs. These compilations are trade secrets as defined by the DTSA and Ferreira took all of these compilations.

59.     The value of AssuredPartners' trade secrets is demonstrated, in part, by Ferreira's retention of those trade secrets after separation from AssuredPartners.

60.     AssuredPartners' Confidential Information is not generally available to its competitors. It derives independent economic value from not being generally known to other persons who could otherwise obtain economic value from its disclosure or use, and it is the subject of efforts that are reasonable under the circumstances to maintain its confidentiality.

61.     AssuredPartners' Confidential Information provides critical commercial and competitive advantages to AssuredPartners.

62.     AssuredPartners has taken reasonable and adequate precautions to protect its Confidential Information, including, but not limited to, limiting access to the information to a select group of individuals on a need-to-know basis in order to perform their employment and Producer duties, and requiring certain individuals to sign confidentiality agreements as a condition of employment.

63.     AssuredPartners' trade secrets are related to its products and services used in, or intended to be used in, interstate or foreign commerce.

64.     Ferreira had access to AssuredPartners' trade secrets, which were provided exclusively for the purpose of furthering AssuredPartners' business.

65.     Ferreira and NFP are aware of the confidential and proprietary nature of AssuredPartners' Confidential Information, and of their duty not to use such information for their own benefit, or for the benefit of any person or entity other than AssuredPartners.

66.     Ferreira and/or NFP have willfully, wrongfully, and maliciously misappropriated AssuredPartners' Confidential Information by using their knowledge of AssuredPartners' trade secret information relating to its clients to AssuredPartners' detriment.

67.     Ferreira and/or NFP have engaged in actual and threatened misappropriation of AssuredPartners' trade secrets.

68.     AssuredPartners has suffered and will continue to suffer irreparable harm, including, but not limited to, a loss of its competitive advantage, loss of business, loss of goodwill, and other damage unless Ferreira and NFP, are enjoined from continuing to benefit from any unlawful misappropriation of AssuredPartners' trade secrets and confidential information.

69.     Unless restrained, Ferreira and/or NFP will continue to misappropriate AssuredPartners trade secrets in violation of the Act.

70.     As a direct and proximate consequence of the conduct of Ferreira and/or NFP, AssuredPartners has been damaged in an amount to be proven at trial.

71.     The conduct of Ferreira and/or NFP was willful, malicious, and done in conscious disregard of AssuredPartners' rights, entitling AssuredPartners to exemplary damages and attorney's fees and costs in an amount to be proven at trial.

72.     Pursuant to the Act, AssuredPartners is entitled to preliminary and permanent injunctive relief, enjoining and restraining Ferreira and NFP, from all acts of actual and threatened misappropriation of the trade secrets of AssuredPartners; and an award of compensatory damages for actual losses caused by Defendants' misappropriation of trade secrets, attorneys' fees, an award of damages for unjust enrichment caused by Defendants' misappropriation of trade secrets, and an award of exemplary damages under 18 U.S.C. § 1836(b)(3).

## SECOND CAUSE OF ACTION
### Violation of the New Jersey Uniform Trade Secrets Act
### (Against Ferreira and NFP)

73.     AssuredPartners re-alleges and incorporates paragraphs 1 through 72 by reference as if fully set forth herein.

74.     AssuredPartners is the rightful owner of its Confidential Information, including, but not limited to the identity of clients and prospective clients, including the contact information of key decision-makers, client insurance needs; vendors; insurance carriers, policy terms of existing clients, expiration/renewal dates, AssuredPartners' financial condition including its marketing plans, pricing and business strategies and methods, and the services and products AssuredPartners offers, including insurance rating information; and pricing information for AssuredPartners' insurance offerings and other products.  Again, this information is normally summarized and compiled into documents such as renewal binders, claims reports, quotes and

summaries of insurance programs. These compilations are trade secrets as defined by the New Jersey Trade Secrets Act and Ferreira took all of these compilations.

75. Ferreira had access to AssuredPartners' Confidential Information, which was communicated in confidence to Ferreira by AssuredPartners.

76. AssuredPartners' Confidential Information is not generally available to AssuredPartners' competitors. It derives independent economic value from not being generally known to other persons who could otherwise obtain economic value from its disclosure or use, and it is the subject of efforts that are reasonable under the circumstances to maintain its confidentiality

77. AssuredPartners' Confidential Information provides critical commercial and competitive advantages to AssuredPartners.

78. AssuredPartners has taken reasonable and adequate precautions to protect its Confidential Information, including, but not limited to, limiting access to the information to a select group of individuals on a need-to-know basis in order to perform their employment and agent duties, and requiring certain individuals, including Ferreira, to sign confidentiality agreements as a condition of employment.

79. Ferreira is prohibited from misappropriating AssuredPartners' Confidential Information which is a trade secret pursuant to the New Jersey Trade Secret Act.

80. Ferreira and NFP are aware of the confidential and proprietary nature of AssuredPartners' trade secrets, and of Ferreira's duty not to use such information for Ferreira's own benefit, or for the benefit of any person or entity other than AssuredPartners.

81.     Ferreira and/or NFP willfully, wrongfully, and maliciously misappropriated AssuredPartners' trade secrets by using Ferreira's knowledge of AssuredPartners' the trade secrets relating to its clients to AssuredPartners' detriment.

82.     Ferreira and/or NFP have engaged in actual and threatened misappropriation of AssuredPartners' trade secrets.

83.     AssuredPartners has suffered and will continue to suffer irreparable harm, including, but not limited to, a loss of its competitive advantage, loss of business, loss of goodwill, and other damage unless Ferreira and NFP are enjoined from continuing to benefit from any unlawful misappropriation of AssuredPartners' trade secrets.

84.     Unless restrained, Ferreira and/or NFP will continue to misappropriate AssuredPartners' trade secrets in violation of the Act.

85.     As a direct and proximate consequence of the conduct of Ferreira and/or NFP, AssuredPartners has been damaged in an amount to be proven at trial.

86.     The conduct of Ferreira and/or NFP was willful, malicious, and done in conscious disregard of AssuredPartners' rights, entitling AssuredPartners to exemplary damages and attorney's fees and costs in an amount to be proven at trial.

87.     Pursuant to the Act, AssuredPartners is entitled to preliminary and permanent injunctive relief, enjoining and restraining Ferreira from all acts of actual and threatened misappropriation of the trade secrets of AssuredPartners; and an award of damages against Ferreira and NFP to compensate AssuredPartners for all losses proximately caused by such acts of actual and threatened misappropriation.

### THIRD CAUSE OF ACTION
### Breach of Contract
### (Against Ferreira)

88.     AssuredPartners re-alleges and incorporates paragraphs 1 through 87 by reference as if fully set forth herein.

89.     On December 19, 2011, as a condition of continuing employment with AssuredPartners following the Acquisition, Ferreira entered into an Agreement with AssuredPartners which required ongoing mutual duties of the parties.

90.     The Agreement with Ferreira is valid and enforceable.

91.     AssuredPartners performed all of its obligations under its agreement with Ferreira.

92.     Under the Agreement, Ferreira promised that Ferreira would not solicit, quote, place, provide, renew or service AssuredPartners' clients for two years after employment ended.

93.     Under the Agreement, Ferreira promised not to take any action that would cause a client of AssuredPartners to cease or refrain from doing business with AssuredPartners.

94.     Under the Agreement, Ferreira agreed not to disclose AssuredPartners' Confidential Information to anyone not authorized to receive or use the information, and not to retain any such information after employment ended.

95.     The post-termination covenants in the Agreement are reasonable in scope and duration, and are necessary to protect AssuredPartners' legitimate business interests in its Confidential Information, goodwill, and longstanding client relationships. Ferreira breached the Agreement and continues to breach the Agreement by: retaining and using AssuredPartners' Confidential Information; using AssuredPartners' Confidential Information to solicit AssuredPartners' clients; soliciting, quoting, placing, providing, renewing and/or servicing

AssuredPartners' clients; taking actions that would cause AssuredPartners clients to cease or refrain from doing business with AssuredPartners.

96.     As a direct and proximate consequence of Ferreira's conduct, AssuredPartners has incurred, and will continue to incur, significant damage. Specifically, AssuredPartners has lost clients, and suffered damage to its goodwill, reputation, and legitimate business interests in excess of $108,000 annual revenue.

97.     As described above, Ferreira has breached, and will continue to breach, contractual and legal obligations to AssuredPartners, and AssuredPartners has suffered, and will continue to suffer, irreparable harm and other damage as a result of Ferreira's actions in the absence of injunctive relief.

### FOURTH CAUSE OF ACTION
### Tortious Interference with Contract
### (Against Ferreira and NFP)

98.     AssuredPartners re-alleges and incorporates paragraphs 1 through 97 by reference as if fully set forth herein.

99.     AssuredPartners possesses valid and enforceable contractual relationship with its clients.

100.    Ferreira and/or NFP had knowledge of AssuredPartners' contracts with its clients and of AssuredPartners' expectancy that these clients would continue to utilize its products and services, including purchasing future insurance policies.

101.    By the acts described above, Ferreira and/or NFP have intentionally interfered with AssuredPartners' contractual relationships with its clients.

102.    Ferreira and/or NFP have had an improper motive and improper means to interfere with AssuredPartners' contractual relations without lawful justification.

103.    As a direct and proximate consequence of the tortious interference Ferreira and/or NFP with AssuredPartners' contracts and business relations, AssuredPartners has been and will continue to be irreparably damaged through the immeasurable loss of business, client relations, profits and goodwill for which there is no adequate remedy at law.

104.    AssuredPartners is entitled to preliminary and permanent injunctive relief against Ferreira and/or NFP, enjoining and restraining them from further interfering with AssuredPartners' contractual and business relations.

105.    As a direct and proximate consequence of Ferreira and/or NFP intentional and tortious conduct, AssuredPartners has been damaged in an amount to be proven at trial.

106.    Ferreira and/or NFP tortious conduct was willful, malicious, and done in conscious disregard of AssuredPartners' rights, entitling AssuredPartners to punitive damages and attorney's fees and costs in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### Tortious Interference with Economic Advantage
### (Against Ferreira and NFP)

107.    AssuredPartners repeats and re-alleges prior paragraphs 1 through 106 of the Complaint and incorporates them herein by reference.

108.    Through its investment of significant resources and goodwill, AssuredPartners has valuable business relationships with its clients, which were developed over time at great effort and expense to AssuredPartners.    AssuredPartners also has valuable relationships with its employees.

109.    Ferreira and/or NFP are aware of AssuredPartners' relationships with its customers and employees.

110.    Ferreira and/or NFP's wrongfully, intentionally, and with malice, interfered with AssuredPartners' relationships with customers and employees.

111.    Ferreira and/or NFP's wrongful conduct as described above constitutes interference with AssuredPartners' current and prospective economic advantage with AssuredPartners' clients and employees.

112.    Ferreira and/or NFP's wrongfully, intentionally, and with malice, interfered with AssuredPartners' relationships with its current clients by using confidential business information to wrongfully compete against AssuredPartners.

113.    Ferreira and/or NFP's wrongful conduct as described above constitutes interference with AssuredPartners' current and prospective advantage with AssuredPartners current clients.  NFP has also intentionally interfered with its prospective business relationships with employees.

114.    Ferreira and/or NFP have acted with wrongful motives and/or have utilized wrongful means.

115.    Ferreira and/or NFP's wrongful conduct has caused AssurredPartners substantial monetary damages and exposure, and, unless enjoined, will continue to cause irreparable harm and damages to AssuredPartners.

### SIXTH CAUSE OF ACTION
### Unjust Enrichment
### (Against NFP)

116.    AssuredPartners re-alleges and incorporates paragraphs 1 through 115 by reference as if fully set forth herein.

117.    Through the actions alleged herein, NFP has been unjustly enriched and benefited.

118.    Benefits, including profits, revenues, and income, received by the Defendants through the actions alleged herein were obtained improperly, unlawfully, and unjustly.

119.    NPF has received commissions and other income through the improper and unlawful conduct alleged herein and has been unjustly enriched to the detriment and harm of AssuredPartners.

120.    NFP has received revenue, profits, and income through the improper and unlawful conduct alleged herein and has been unjustly enriched to the detriment and harm of AssuredPartners.

121.    As a matter of equity, NFP should be required to disgorge any and all revenues, profits, commissions, and income resulting from the improper and unlawful conduct alleged herein and to reimburse AssuredPartners in an amount equal to the unjust enrichment.

**SEVENTH CAUSE OF ACTION**
**Violation of New Jersey's Computer Related Offenses Act, N.J.S.A. 2A:38A-3**
**(Against Ferreira)**

122.    AssuredPartners re-alleges and incorporates paragraphs 1 through 121 by reference as if fully set forth herein.

123.    Ferreira was not authorized by AssuredPartners to access AssuredPartners' computer network to copy, download or transfer AssuredPartners' confidential information to his personal email accounts for his own use and gain as described herein.

124.     Through his actions as set forth above, Ferreira has:

      a.        purposefully or knowingly, and without authorization, altered, damaged, took, or destroyed data existing internally in AssuredPartners' computers and computer systems, causing damage in business or property to AssuredPartners in violation of N.J.S.A. 2A:38A-3(a);

      b.        purposefully or knowingly, and without authorization, accessed a computer system causing damage in business or property to AssuredPartners in violation of N.J.S.A. 2A:38A-3(c); and/or

      c.        purposefully or knowingly, and without authorization, accessed and recklessly altering, damaging, destroying or obtaining data from AssuredPartners' computers and computer systems, causing damage in business or property to AssuredPartners in violation of N.J.S.A. 2A:38A-3(e).

125. Ferreira's theft of AssuredPartners' confidential electronic data has caused AssuredPartners to devote resources to investigate the extent of damage caused by Ferreira's misconduct.

126. As a result of the foregoing computer related offenses, AssuredPartners will be threatened with loss of business expectancies, customers, its trade secrets and goodwill in amounts which may be impossible to determine, unless Ferreira is enjoined and restrained by order of the Court

127. In addition, AssuredPartners seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### Breach of Duty of Loyalty
### (Against Ferreira)

128.     AssuredPartners re-alleges and incorporates paragraphs 1 through 127 by reference as if fully set forth herein.

129.     As its employee, Ferreira owed AssuredPartners a duty of undivided loyalty. That duty required him while employed by AssuredPartners, to refrain from acting contrary to AssuredPartners' best interests.

130.     Ferreira duty of loyalty also requires that, even after his termination of employment, Ferreira not use or disclose AssuredPartners' confidential and proprietary information.

131.     As an employee of AssuredPartners, Ferreira owed AssuredPartners a fiduciary duty to act in the best interest of AssuredPartners.

132.     Based upon the foregoing alleged conduct, Ferreira breached his duty of loyalty to AssuredPartners by engaging in conduct which included, but is not limited to, misappropriating AssuredPartners' confidential and proprietary business records, sending AssuredPartners' confidential and proprietary information to himself and therefore his new business venture as a direct competitor, usurping and directing corporate opportunities to a competitor, and otherwise acting against the interest of AssuredPartners.

133.     As a direct and proximate consequence of Ferreira's conduct, AssuredPartners has and will continue to suffer monetary damages, in an amount to be determined.

134.     As a direct and proximate result of Ferreira's violations of his contractual obligations to AssuredPartners, Ferreira has exposed AssuredPartners to irreparable and incalculable harm.

135.    Ferreira's actions are intentional, willful, wanton and reckless and are calculated to harm AssuredPartners in its business affairs.

**PRAYER FOR RELIEF**

WHEREFORE, AssuredPartners respectfully requests that this Court:

a)      Enter an injunction enjoining and restraining Ferreira, and all those acting in concert or participation with him, from using, possessing, disclosing or having access to any AssuredPartners' Confidential Information;

b)      Enter an order requiring Ferreira to return all AssuredPartners' Confidential Information to AssuredPartners;

c)      Enter an injunction enjoining and restraining Ferreira from offering, selling, soliciting, quoting, placing, providing, renewing or servicing any insurance product or service to, or on behalf of, any persons or entities, for the 24-month period immediately preceding the end of Ferreira's employment (a) which were clients or prospective clients of AssuredPartners with whom Ferreira had involvement in proposing, selling quoting, placing, providing, servicing, or renewing any insurance product or service; and/or (b) about whom Ferreira received confidential, proprietary, and/or non-public information; and/or (c) were clients of office where Ferreira was employed (collectively, "Restricted Clients");

d)      Enter judgment against Ferreira and NFP for compensatory damages in an amount to be determined at trial;

e)      Enter judgment against Ferreira and NFP for exemplary damages in an amount to be determined at trial;

f)      Award AssuredPartners the costs and expenses, including the reasonable attorneys' fees and costs, AssuredPartners incurs as a result of Ferreira's breach of the Agreement, misappropriation of trade secrets, and tortious interference with AssuredPartners' contractual relations; and

g)      Award AssuredPartners any such other relief as the Court may deem just and proper.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.

By:s/*Kevin B. Walker*
   Kevin B. Walker
   10 Madison Avenue, Suite 400
   Morristown, NJ 08960
   Telephone: 973.656.1600
   Facsimile:973.656.1611
   *kevin.walker@ogletree.com*

   Attorneys for Plaintiff,
   AssuredPartners Jamison, LLC

*Of Counsel:*

Todd J. Kaiser, IN 10846-49 (motion for pro hac vice admission to be filed)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: 317.916.1300
Facsimile: 317.916.9076
*todd.kaiser@ogletree.com*

Dated February 8, 2023

54981359.v1-OGLETREE